IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 21 CR 636-5 |
| -v- | Honorable Judge Sara L. Ellis |
| HECTOR CHACON, | |
| Defendant. | |

**DEFENDANT HECTOR CHACON'S RESPONSE TO THE GOVERNMENTS SUPPLEMENTAL MOTIONS *IN LIMINE***

NOW COMES Defendant, HECTOR CHACON, through his attorneys, BLAIRE C. DALTON and QUINN MICHAELIS, and hereby respond to the government's Consolidated Motions *in Limine* (Dkt. 447) as follows:

**I. BAR DEFENDANT'S INTRODUCTION OF SELF-EXCULPATORY HEARSAY**

Despite the fact that this case was previously set for trial back in April, the government did not identify the precise portions of Mr. Chacon's voluntarily recorded interview with ATF agents that it intends to introduce until October 3, 2025 after 9:00p.m. It is premature for the defense to say which portions of the recorded interview or text message conversations between Mr. Chacon and Mancera it may seek to introduce through cross examination. That being said, there are certainly portions of the recorded interview that the government has not identified that are relevant and admissible under the Rule of Completeness, pursuant to Fed. R. Evid. 106.

1

Rule 106 of the Federal Rules of Evidence provides that "when a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it"; and under the name "rule of completeness," the principle of Rule 106 has been extended to nonrecorded statements. *United States v. Muoghalu*, 662 F.3d 908, 913 (7th Cir. 2011); *United States v. Price*, 516 F.3d 597, 604–05 (7th Cir.2008); *United States v. Li,* 55 F.3d 325, 329–30 (7th Cir.1995).

Rule 403 codifies the district court's broad discretion to control the admission of evidence. In defining this discretion, Rule 403 instructs the court to balance the probative value of the evidence against "the danger of unfair prejudice, confusion of the issues, or misleading the jury, or . . . considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403. *United States v. Khan*, 508 F.3d 413, 417 (7th Cir. 2007). Accordingly, this Court should not, at the pretrial stage, provide the government with an open invitation to selectively parse and admit carefully edited recorded interview to present to the jury without proper context.

The government has cherry-picked parts of the recorded conversation that can most certainly mislead the jury without context. For example, the government intends to play certain sections of the recorded conversation and intentionally jump over relevant and material information that explains the connection between two disjointed sections. Clearly, a recorded interview taken out of context will confuse

2

the issues in this case, mislead the jury and create a real danger of unfair prejudice against Mr. Chacon. Rather than identifying the sections of the recorded conversation that Mr. Chacon believes are admissible under Fed.R.Evid. 106, Mr. Chacon respectfully requests that he be provided with the opportunity to do so at the pre-trial conference. Additionally, as stated below, Mr. Chacon objects to the introduction of any section of his recorded conversation where he discusses his use of marijuana, purchase of marijuana, or the suspension of his FOID card.

## II. PROHIBIT ARGUMENT OR EVIDENCE CONCERNING CONSTITUTIONAL ISSUES

The government asks this Court to bar Mr. Chacon from presenting evidence or making argument regarding the constitutionality of the agents' interactions with him "and any Second Amendment challenges to the indictment." Dkt. No. 447, pg. 9. Mr. Chacon will not present evidence or argument regarding the suppression of his October 19, 2021 post-arrest interview, will not argue that his March 2, 2022 interview was obtained in violation of his Constitutional rights, and will not question the constitutionality of the Second Amendment. However, Mr. Chacon must be permitted to present evidence and argument that his conduct was lawful under the Second Amendment and that he did not violate 18 U.S.C. §922(a).

## III. BAR IMPERMISSIBLE USE OF PRIOR GRAND JURY TESTIMONY

This request is premature and assumes defense counsel does not know how to properly impeach a witness. First of all, the government is the party who originated the grand jury transcripts and, as such, are acutely aware of what its witnesses have previously testified to under oath. Second, consistent with criminal procedure,

3

should a government witness testify at trial to something that does not line up with a previous statement, especially one made under oath, counsel will abide by the rules of evidence in directing the witness, the Court, and the government's attention to the page number and line numbers of the inconsistent statement in the same instance that defense counsel poses the question.

To summarily restrict defense counsels' cross-examination or trial strategy is inappropriate. This motion should be denied.

**IV. BAR IMPERMISSIBLE USE OF WITNESS INTERVIEWS DURING CROSS**

This motion is premature. Mr. Chacon objects to any blanket pretrial restriction to any line of cross-examination based on a witness's prior statements to law enforcement. Defendants have a constitutional right under the Sixth Amendment to confront the witnesses against him. Any limitation on such confrontation must be carefully determined by the Court and must be done on a witness-by-witness basis.

The government first argues, generally, that an agents interview report is not the witness's statement. Dkt. 447, pp. 13-14. Even if the government's view of the Jencks Act is correct, which we do not concede, such a ruling can only be made on a report-by-report basis. Many interview reports, particularly those written by responsible agents who are taking notes at the time of the interview, hew closely to what the interviewee says.

Moreover, during interviews, witnesses are often asked to confirm or expand upon certain aspects of their statements. In either case, such interview reports

4

would therefore qualify as "a substantially verbatim recital of an oral statement" as defined in the Jencks Act. 18 U.S.C. §3500(e)(2).

The interview reports themselves generally will not specifically disclose either the accuracy of the agent making the report or whether the interviewee was asked to confirm or expand upon statements made during the interview. Therefore, it is Mr. Chacon's position that this Court cannot make the blanket ruling requested by the government unless the Court conducts an evidentiary hearing as to each interview to determine the procedures used during that interview as well as the procedures used in preparing each interview report.

However, the government's discussion of *Palermo v. United States*, 360 U.S. 343 (1959), raises a more serious concern. The government quotes language from *Palermo* describing reports which contain "summaries of an oral statement which evidence substantial selection of material" or "statements which contain [an] agent's interpretations or impressions." The government asserts that the reports in this case are like such reports. Its assertions seem to suggest that when its agents prepared witness interview reports in this case those agents did not write reports which accurately reflect what witnesses said, but instead the agents substantially selected particular materials and recorded their own interpretations and impressions.

If this is true, then the concern should not be whether the defense can use these reports in examining government witnesses. The concern should be the nature and extent of, and motive for, the distortion practiced by any law enforcement

officials who authored reports that purport on their face to set forth a witness's statements but in actuality set forth the agent's own selective and biased interpretations. If such a procedure in fact has been followed in preparing the witness reports in this case, Mr. Chacon requests an evidentiary hearing regarding this issue.

Finally, the government asks this Court to "preclude the defense" from a variety of actions in connection with the reports, most of which seem to be either misrepresenting the nature of the report or trying to introduce the report itself into evidence. Such a ruling is unnecessary. Defense counsel has many years of experience cross-examining government witnesses, including impeaching witnesses based on law enforcement interviews. Defense counsel will follow the Federal Rules of Evidence and the appropriate procedures both as to the nature of their questions to the witnesses and their use of the reports with the witnesses.

If it is necessary to perfect impeachment of a witness, defense counsel will call the agent who authored the report, not offer the report into evidence. Moreover, in the event defense counsel believes that an interview report itself can properly be offered into evidence that issue would obviously be ruled on by the Court before the document is admitted and published to the jury. The government's request should be denied.

## V. ADMIT SUMMARY CHARTS

The government indicates that it intends to admit a summary chart of 22 firearms and firearms accessories recovered from, in part, Mancera's storage unit.

Dkt 447, pp 16. To date no summary charts have been produced that indicate which items from Mancera's storage unit the government intends to introduce. Mr. Chacon asks that the government produce the chart so that he has an opportunity to review whether he has any objections to the chart, or the specific items listed from Mancera's storage unit.

## VI. ADMIT EVIDENCE OF DEFENDANT'S CRIMINAL HISTORY AND DRUG USE

On what is essentially the eve of trial, the government submits a late notice of its intent to introduce what can only be described as inadmissible 404(b) evidence. The government requests to introduce evidence of Mr. Chacon's **misdemeanor** conviction for unlawful use of a weapon as well as his use of marijuana. Shortly after the government's supplemental filing, the defense requested that the government produce ISP records that document the "revocation of his FOID card", his certified conviction, and the transcript of his change of plea hearing. To date, the government has not responded nor produced the requested information that it now asks this Court to introduce. In keeping with the deadline imposed by the Court to respond to the government's supplemental Motions *in Limine*, Mr. Chacon responds as follows:

### A. Evidence of Mr. Chacon's Misdemeanor Conviction

At the outset, the government claims that evidence of Mr. Chacon's misdemeanor conviction is "relevant" under Fed. R. Evid. 402 and thus does not fall within Fed. R. Evid. 404(b) prohibition on propensity evidence. Specifically, the

7

government claims the misdemeanor conviction, and a transcript from his plea to the same, are direct evidence of Mr. Chacon's knowledge and motive with respect to engaging in illegal firearms trafficking. Dkt. 447, p. 21-22.

Preliminarily, the government's description of the proffered evidence is wrong. Mr. Chacon was arrested on September 24, 2019, and charged with carrying a firearm in his vehicle without a valid concealed carry permit. At the time of his arrest, he was not ordered to surrender his FOID card or any firearms. Mr. Chacon eventually surrendered firearms he possessed to law enforcement on January 8, 2020, but the government has not disclosed any information regarding the circumstances of the revocation of his FOID card, documentation of the notice he received to surrender his firearms or FOID card, or whether his FOID card was, in fact, revoked before the offenses charged here.

In February of 2020, Mr. Chacon plead guilty to the misdemeanor offense of carrying or possessing "with intent to use the same unlawfully against another, a dagger, dirk, billy, dangerous knife, razor, stiletto, broken bottle or another piece of glass, stun gun or taser or any other dangerous or deadly weapon or instrument of like character" in violation of 720 ILCS 5/24-1(a)(2). Mr. Chacon's offense of conviction specifically does not include firearms, and is not one that would prohibit him from obtaining a FOID card or having his suspension lifted.

In fact, it appears that Mr. Chacon's FOID card may not have been revoked at all. According to a document first disclosed by the government on October 7, 2025, U.S. Pretrial Services sent a notice to the Illinois State Police on May 18,

2022, that Mr. Chacon surrendered his FOID card pursuant to this Court's release order. According to the Illinois FOID Act, an individual under felony indictment may receive a FOID card *suspension* and is still required to complete the ISP firearms disposition record the government seeks to enter. Presumably after he was charged with a felony in 2019, Mr. Chacon received a notice prompting him to surrender the firearms he legally possessed, and he complied with that order. Individuals are required to turn over their FOID cards at the time they surrender their firearms. 430 ILSC 65/9.5 (a)(1). This requirement to surrender a FOID card is reiterated at the bottom of the Firearms Disposition Record from January 9, 2020 that Mr. Chacon signed indicating he was in compliance with this regulation. There is no reason to believe that Mr. Chacon failed to surrender his FOID card to law enforcement at the time he surrendered his firearms in 2020. Unlike a revocation, a suspension lasts only as long as the disqualification lasts. 430 ILCS 65/8.3 ("The Illinois State Police may suspend the Firearm Owner's Identification Card of a person whose Firearm Owner's Identification Card is subject to revocation and seizure under this Act for the duration of the disqualification if the disqualification is not a permanent ground for revocation of a Firearm Owner's Identification Card under this Act.") At some point, Illinois returned Mr. Chacon's FOID card to him, as evidenced by this Court's order to surrender his FOID card to U.S. Pretrial Services. If anything, the government's proffered evidence demonstrates that Mr. Chacon continued to comply with his obligations under the Illinois FOID Act up to an including surrendering the FOID card to U.S. Pretrial Services in 2022.

**B. Evidence of Mr. Chacon's Marijuana Use**

Outrageously, the government seeks to introduce evidence of Mr. Chacon's marijuana use to establish his motive and knowledge in the charged offense. The government argues that because Mr. Chacon occasionally purchased marijuana from defendant Mancera, his assistance to Mancera with regard to the firearms provided Mr. Chacon with the knowledge that he was assisting in an illegal business. Dkt. 447, p. 20. The government fails to explain how this evidence is direct evidence that Mr. Chacon knew he was assisting Mancera's firearms trafficking without a license. At the end of the day, the government must prove whether Mr. Chacon knowingly aided and abetted Mancera's willful sale of firearms without a license, not whether Mr. Chacon knew of Mancera's other illegal activities.

**1. <u>The Proffered Evidence Is Not Direct Evidence.</u>**

Direct evidence is evidence that "tend[s] to prove the elements of the offense....actually charged. *United States v. Vargas*, 689 F.3d 867, 874 (7th Cir. 2012). Mr. Chacon's criminal history and related FOID status are not direct evidence of the charged offenses. The government offers no argument as to how a previous misdemeanor conviction that did not involve the use of a firearm demonstrates that Mr. Chacon acted willfully with knowledge that his conduct in this case was unlawful. As of this filing, the government has not even established that Mr. Chacon's FOID card was revoked.

The government also fails to explain how evidence of Mr. Chacon's use of narcotics is direct evidence that Mr. Chacon knew he was assisting Mancera's

firearms trafficking without a license. The government must prove the Mr. Chacon knowingly aided and abetted Mancera's willful sale of firearms without a license, not whether Mr. Chacon knew of Mancera's other illegal activities. The only way the government could possibly connect Mr. Chacon's use of narcotics to knowledge of Mancera's license status is through a chain of inferences that is the very opposite of direct evidence.

The *Gorman* case illustrates the proper use of direct evidence. The defendant there was charged with perjuring himself before a grand jury, regarding whether he had diverted investigators away from a garage area that contained a Bentley his cousin purchased with ill-gotten gains. The defendant was questioned during grand jury proceedings whether he ever had a Bentley in the garage, and he replied in the negative. At trial, the government presented evidence that the defendant orchestrated the removal of the Bentley from the garage—direct evidence that the defendant lied about having a Bentley in the garage. *United States v. Gorman*, 613 F.3d 711, 719 (7th Cir. 2010).

The government's proffered evidence here is not direct evidence of the charged offenses. The proffered evidence is not direct evidence that Mr. Chacon knew Mancera was selling firearms without a firearms license and intended to assist him in that illegal activity. In fact, some of Mr. Chacon's statements the government now asks the Court to prevent Mr. Chacon for using at trial show that Mr. Chacon did *not* know Mancera was prohibited from possessing or selling firearms. The proffered marijuana evidence offers less of a connection to the

charged offense.

## 2. **The proffered evidence is clearly propensity evidence disguised as inextricable intertwinement evidence.**

The government's argument that the proffered evidence is necessary to prove that Mr. Chacon had "full knowledge of the circumstances" constituting the charged offense is nothing more than a restatement of the "inextricably intertwined" doctrine. This is entirely improper. The only method the Court should apply in consideration of this evidence, is whether it is admissible under Rule 404(b). *See United States v. Cureton*, 739 F.3d 1032, 1037 (7th Cir. 2014). Indeed, the Seventh Circuit has recently cast doubt on the continuing viability of the inextricable intertwinement doctrine, finding that "[b]ecause almost all evidence admitted under this doctrine is also admissible under Rule 404(b), there is often 'no need to spread the fog of "inextricably intertwined" over [it].' " *Conner,* 583 F.3d at 1019 (*quoting United States v. Taylor,* 522 F.3d 731, 734 (7th Cir.2008), *cert. denied,* ––– U.S. –––, 129 S.Ct. 190, 172 L.Ed.2d 135 (2008)). In the simplest terms, "[i]f evidence is not direct evidence of the crime itself, it is usually propensity evidence simply disguised as inextricable intertwinement evidence, and is therefore improper, at least if not admitted under the constraints of Rule 404(b). *United States v. Gorman*, 613 F.3d 711, 718 (7th Cir. 2010).

3. The proffered evidence is not admissible under 404(b).

The government does not even attempt to argue that the proffered evidence could meet the requirements Federal Rule of Evidence 404(b), despite the request in the alternative to admit evidence under the Rule. Rule 404(b) states "evidence of

12

other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," but may be admissible for "other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." However, "Rule 404(b) excludes [other acts] evidence if its relevance to 'another purpose' is established *only* through the forbidden propensity inference." *United States v. Gomez*, 763 F.3d 845, 855 (7th Cir. 2014)(en banc). If the court determines that the evidence is relevant for a non-propensity purpose, "the court may still exclude the evidence under Rule 403 if its probative value is substantially outweighed by a danger of unfair prejudice." *Id.* at 856-57.

The Seventh Circuit cautioned that it is not sufficient to point to a "permitted" purpose and assert that other-act evidence is relevant to that permitted purpose. *Id.* at 854. To this end, the Court must "not just ask whether the proposed other-act evidence is relevant to a non-propensity purpose, but how exactly the evidence is relevant to that purpose—or more specifically, how the evidence is relevant without relying on a propensity inference." *Id.* at 856.

Before such evidence can be admitted, the government must establish a propensity-free chain of reasoning by showing "exactly how the proffered evidence should work in the mind of a juror to establish the fact the government claims to be trying to prove." *United States v. Miller*, 673 F.3d 688, 699 (7th Cit. 2012). In *Miller,* for example, the Seventh Circuit ruled that evidence of a prior felony conviction for possession of cocaine with the intent to distribute should not have

13

been admitted in a case where a defendant was charged with the same crime eight years later, along with other charges. While the earlier felony conviction was relevant to establish the defendant's status as a felon in light of a felon in possession charge in the case, the Seventh Circuit ruled that the "admission of the details" of the prior conviction violated Rule 404(b). *Id.* at 700.

Here, Mr. Chacon's previous misdemeanor and FOID status are only offered for propensity reasons. The government wants to point to a past instance in which Mr. Chacon was purportedly acting without the appropriate firearms licenses in order to demonstrate that he again is acting without the appropriate firearms licenses. Because Mr. Chacon did it once before, he must have intended to it again now. *Miller*, 673 F.3d at 699. That "is precisely the forbidden propensity inference." *Id.*

With respect to the marijuana evidence, the central issue of the government's aiding and abetting case will be whether Mr. Chacon had the intent to facilitate Mancera's illegal firearms trafficking. Part and parcel of the "intent" element is whether Mr. Chacon knowingly "participated in the criminal activity of unlawfully dealing in firearms without a license and tried to make it succeed." *See* Pattern Jury Instruction for the Seventh Circuit, 2023 ed, at 506. Mr. Chacon is not charged with aiding and abetting Mancera's illegal marijuana business, his knowledge of that business's existence does not shed any light on whether Mr. Chacon knew if Mancera had a license to sell firearms. Any rationale justifying the probative value of this other acts evidence relies completely on a theory that

14

because Mr. Chacon bought marijuana from Mancera he had to have known that Mancera did not have a license to sell firearms. Instances where Mr. Chacon bought marijuana from Mancera cannot establish Mr. Chacon's motive, intent, knowledge, absence of mistake, and lack of accident *without* relying on impermissible propensity evidence. Rather, it will indicate to the jury that because Mr. Chacon bought marijuana illegally from Mancera, he must have intended to aid and abet Mancera's illegal firearms trafficking. Put another way, because Mr. Chacon did one illegal thing with Mancera, he must have intended to do other illegal things with Mancera too.

4. <u>The unduly prejudicial impact of the evidence outweighs any probative value under Rule 403.</u>

Even if the evidence is relevant for a permissible purpose, and it is not, any relevance is substantially outweighed by the danger of unfair prejudice. Fed R. Evid. 403. Evidence is unfairly prejudicial "if it will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." *United States v. Curry*, 79 F.3d 1489, 1498 (7th Cir. 1996). Of potential concern is that evidence of marijuana use will confuse the jury and inflame their passions by bringing in irrelevant allegations of drug use and distribution in a case about licensing requirements. There is no other purpose for introduction of such evidence but to unfairly prejudice the jury against Mr. Chacon.

## VII. CONCLUSION

Wherefore, for the reasons stated above, defendant HECTOR CHACON respectfully asks this Honorable Court to deny in part the government's supplemental motions *in limine* and withhold ruling in part on the government's supplemental motions *in limine.*

Respectfully submitted,

/sBlaire C. Dalton

/sQuinn Michaelis

Blaire C. Dalton
DALTON LAW, LLC
53 W. Jackson Blvd., Suite 1523
Chicago, IL 60604
(847) 373-4750

Quinn A. Michaelis
Attorney At Law
73 West Monroe Street, Suite 106
Chicago, IL 60603
(312) 714-6920

## CERTIFICATE OF SERVICE

I hereby certify that on October 8, 2025 , I electronically filed the above

**DEFENDANT HECTOR CHACON'S RESPONSE TO THE GOVERNMENTS SUPPLEMENTAL MOTIONS *IN LIMINE***
with the Clerk of Court using the CM/ECF system to all listed parties in the case.

Respectfully Submitted on October 8, 2025


By His Attorney,
s/ Quinn A. Michaelis
Quinn A. Michaelis
An Attorney for Hector Chacon
73 W. Monroe, Suite 106
Chicago, Illinois 60601
312-714-6920